964 A.2d 830 (2009)
405 N.J. Super. 367
In the Matter of RAYMOUR AND FLANIGAN FURNITURE, and Neil Goldberg, President And Individually.
No. A-4622-07T1.
Superior Court of New Jersey, Appellate Division.
Argued January 6, 2009.
Decided March 2, 2009.
*832 Paul DeCamp (Jackson Lewis) of the Virginia, D.C. and California bars, admitted pro hac vice, argued the cause for appellants, Raymour and Flanigan and Neil Goldberg (Jackson Lewis, attorneys; David G. Islinger, Mr. DeCamp and Justin B. Cutlip, on the brief).
Robert M. Strang, Deputy Attorney General, argued the cause for respondent, New Jersey Department of Labor and Workforce Development (Anne Milgram, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Mr. Strang, on the brief).
Before Judges WINKELSTEIN, GILROY and CHAMBERS.
The opinion of the court was delivered by
WINKELSTEIN, P.J.A.D.
The New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a to -56a38, provides that every employer must pay its employees 1½ times the employee's regular hourly wage (the statutory rate) for each hour the employee works in excess of 40 hours in any week. N.J.S.A. 34:11-56a4. The law provides an exemption for, among other employers, "trucking industry employers," which the statute defines as "any business or establishment primarily operating for the purpose of conveying property from one place to another by road or highway, including the storage and warehousing of goods and property." Ibid.
Appellant, Raymour and Flanigan (R & F), is in the retail furniture business. In facilities separate from its retail stores, it operates customer service centers and distribution centers, where it stores and warehouses its goods, and then transports those goods by truck to its customers. R & F asserts that because its trucking operation is a separate "establishment" from its retail facilities, it qualifies as a "trucking industry employer" vis-à-vis its service and distribution center employees, and is consequently exempt from paying those employees overtime at the statutory rate.
The Commissioner of the Department of Labor and Workforce Development (the Department) disagreed with R & F's position, holding that R & F was not exempt from paying the statutory rate to its customer service and distribution center employees. On appeal, we affirm the Commissioner's decision.

I
The facts are not substantially disputed. R & F is a bedding and furniture retail company that operates sixty-seven retail showrooms, five clearance centers, sixteen customer service centers and two distribution centers throughout six northeastern states, including New Jersey. R & F acknowledges that it is in the retail industry and not in the trucking industry, and that it does not move, store or warehouse freight or property owned by others in exchange for a fee. It only delivers the products that it sells.
*833 R & F consists of two divisions, the retail/sales division and the operations/delivery division. The former is responsible for procuring sales of furniture and bedding from customers at the retail showrooms; the latter for ensuring that adequate inventory is maintained to honor the company's "3 Days or Less" delivery guarantee, and for delivering furniture to R & F's customers.
In New Jersey, R & F operates eleven furniture showrooms, three customer service centers and one distribution center. The sole purpose of the customer service centers is to receive furniture by tractor trailer from R & F's distribution centers and from vendors, and to deliver the furniture to its customers. R & F employees at each customer service center are responsible for scheduling and routing truck deliveries, managing loading and dispatch of trucks, managing the delivery teams' performance throughout the day, and managing truck maintenance and repairs. For example, the Dayton customer service center is a 290,000 square foot distribution and warehouse facility, utilizing twenty-seven trucks to deliver approximately 950 pieces of furniture daily to R & F's customers.
In 2005, the Department investigated an employee complaint that alleged that R & F was not paying its delivery employees the statutory overtime rate. Following its investigation, the Department instructed R & F to provide an audit of its employee overtime payments. R & F declined to do so, claiming that in light of its trucking operations, it was exempt, as a trucking industry employer, from paying the statutory overtime rate to its customer service and distribution center employees. The exemption would allow R & F to pay those employees not less than 1½ times the minimum wage, rather than the statutory overtime rate of 1½ times the employee's regular hourly wage. The exemption states:
Notwithstanding the provisions of this section to the contrary, every trucking industry employer shall pay to all drivers, helpers, loaders and mechanics for whom the Secretary of Transportation may prescribe maximum hours of work for the safe operation of vehicles, pursuant to section 31502(b) of the federal Motor Carrier Act, 49 U.S.C. s.31502(b), an overtime rate not less than 1½ times the minimum wage required pursuant to this section and N.J.A.C. 12:56-3.1.... As used in this section, "trucking industry employer" means any business or establishment primarily operating for the purpose of conveying property from one place to another by road or highway, including the storage and warehousing of goods and property. Such an employer shall also be subject to the jurisdiction of the Secretary of Transportation pursuant to the federal Motor Carrier Act, 49 U.S.C. s.31501 et seq., whose employees are exempt under section 213(b)(1), which provides an exemption to employees regulated by section 207 of the federal Fair Labor Standards Act, 29 U.S.C. 207, and the Interstate Commerce Act, 49 U.S.C. 501 et al.
[N.J.S.A. 34:11-56a4 (emphasis added.)]
R & F submitted that because the sole purpose of the customer service centers is to receive furniture from its distribution centers and vendors for subsequent delivery, by truck, to customers who have purchased furniture from R & F's retail showrooms, each customer service and distribution center is an "establishment," "primarily operating for the purpose of conveying property from one place to another by road or highway." Ibid. Consequently, R & F claimed that it was entitled to the trucking industry overtime exemption *834 relative to its drivers, helpers, loaders, and mechanics who worked at those facilities and, therefore, it was only required to pay those employees an overtime rate of not less than 1½ times the minimum wage established by N.J.S.A. 34:11-56a4 and N.J.A.C. 12:56-3.1.
The minimum wage in New Jersey is the federal minimum hourly wage rate established by section 6(a)(1) of the Federal Labor Standards Act of 1938 (FLSA), 29 U.S.C.A. § 206(a)(1). N.J.S.A. 34:11-56a4; N.J.A.C. 12:56-3.1. Effective October 1, 2006, $7.15 per hour is the minimum hourly wage for 40 hours of working time in any week. N.J.S.A. 34:11-56a4. Because the regular hourly wage of R & F's drivers, helpers, loaders, and mechanics at its customer service and distribution centers is more than 1½ times the statutory minimum wage, R & F paid them their regular hourly wage, not time-and-a-half, for hours in excess of 40 per week.
The Department transmitted the matter to the Office of Administrative Law for a ruling by an Administrative Law Judge (ALJ) as to whether R & F qualified for the exemption. On stipulated facts, the parties cross-moved for summary decision. After examining the statute's legislative history, the ALJ found in favor of the Department, and ruled that R & F did not qualify as a trucking industry employer. The ALJ concluded:
The statute must be applied conjunctively to trucking industry employers to avoid applying the exception too broadly and extending it to retailers such as [R & F], and circumventing the intent of the statute to provide broad support to workers in the form of a statewide minimum wage. It would appear contrary to the intent and meaning of the above statute and regulation to interpret that any business would be eligible for the exemption, but only an establishment primarily engaged in the conveying [of] property from one place to another by road or highway be given the exemption. The legislation was intended to benefit the trucking industry. [R & F] as a business entity is not primarily engaged in the trucking industry business, but is a retailer of furniture and bedding.
Although using a different rationale, the Commissioner agreed with the ALJ's conclusion that R & F did not meet the statutory definition of a trucking industry employer. The Commissioner rejected R & F's argument that its customer service centers operated as separate establishments engaged in the trucking industry, in that those facilities remained part of R & F's overall retail business. Thus, the Commissioner held that R & F was required to pay its employees the statutory rate for hours worked in excess of 40 in a week.
In reaching its conclusion, the Commissioner relied on the meeting transcripts of a wage board the Commissioner of Labor appointed in 1995 to study and make recommendations concerning wages and overtime payments in the trucking industry.[1] After reviewing those transcripts, the Commissioner stated:
In my opinion, the transcripts of those Wage Board hearings establish unequivocally that the `trucking industry employer' exception to the overtime requirement is intended to apply only to trucking companies, which primarily operate for the purpose of conveying property from one place to another by road *835 or highway, and not to a company like [R & F], which is in the retail industry, with a division or divisions within the company focusing solely on the warehousing and delivery of the goods being offered by the company for retail sale. As noted by [the Department], in support of its motion for summary decision before the ALJ, the transcripts of the 1995 Wage Board meetings refer consistently to the industry under review by the Board as `trucking companies,' `trucking companies in New Jersey,' `major truck lines' that `pick up freight,' and the `trucking industry.' One need only look to the yellow pages or its modern day equivalent, an internet directory (e.g.'Yahoo' ), under the heading `trucking companies,' in order to see a list of the types of companies to which the Wage Board was referring. In short, [R & F] is not a trucking company. This, appellant does concede within the Statement of Jointly Stipulated Facts, where [R & F] is described as `a bedding and furniture retail company' and where it states, `[R & F] has been in existence ... since 1947, and acknowledges that it is in the retail industry and not in the trucking industry ... [.]' I agree with [the Department], that [R & F] must be treated as an entire employer in the retail industry, rather than as some sort of `segmented' or `broken up into pieces' employer, with the delivery segment of its business classified as `trucking industry' for the sole purpose of circumventing the State's overtime law.... [T]he courts narrowly construe exemptions from the State's ... statutory overtime pay requirements, because of the essential humanitarian and remedial nature of the legislation, which is designed to benefit workers through increased pay for overtime work.

II
As noted, the Wage and Hour Law defines a trucking industry employer as "any business or establishment primarily operating for the purpose of conveying property from one place to another by road or highway, including the storage and warehousing of goods and property." N.J.S.A. 34:11-56a4 (emphasis added). R & F acknowledges that its customer service and distribution centers are part of a larger business enterprise that is not a trucking business. Nevertheless, it contends that it qualifies for the exemption because each of those centers qualifies as a separate establishment under N.J.S.A. 34:11-56a4 because no retail sales take place in those facilities, and the sole purpose of each of those facilities is primarily to store its merchandise and deliver the merchandise to its customers.
The Department contends that the exemption applies only to a business or establishment operating primarily to move property from one place to another by road or highway, including the storage and warehousing of property; that is, the exemption only applies to companies whose primary business is trucking or moving and storage, not companies that transport goods incident to a different business purpose. And, because R & F's primary business purpose is retail sales, not storing and transporting goods, the exemption from paying the standard overtime rate is not applicable.
In analyzing these arguments, we apply well-established rules of statutory construction. "We ascribe to the statutory words their ordinary meaning and significance, and read them in context with the related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). When a plain meaning of the statute leads to an absurd result or one at *836 odds with the statutory scheme, we may resort to extrinsic evidence, which includes "legislative history, committee reports, and contemporaneous construction." Id. at 492-93, 874 A.2d 1039. The key is always the furtherance of the legislative purpose of the entire legislative scheme, thus we consider more than the particular statute or provision in question. Merin v. Maglaki, 126 N.J. 430, 436, 599 A.2d 1256 (1992). When interpreting a statute or regulation that an agency is charged with enforcing, we give substantial deference to the agency's interpretation which "will prevail provided it is not plainly unreasonable." Id. at 436-37, 599 A.2d 1256. Here, the Department's interpretation of the statutory language, in the context of the entire statutory scheme, is not plainly unreasonable.
The statute is included in N.J.S.A. 34:11-56a1 to -56a38, part of Title 34, Article 2, of the New Jersey Statutes Annotated (West 2008). These statutory enactments pertain to minimum wage standards in New Jersey. The public policy underlying these standards is "to establish a minimum wage level for workers in order to safeguard their health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being." N.J.S.A. 34:11-56a. Put simply, the nature of the statutory scheme is to "protect employees from unfair wages and excessive hours." Keeley v. Loomis Fargo & Co., 183 F.3d 257, 259 (3rd Cir.1999), cert. denied, 528 U.S. 1138, 120 S.Ct. 983, 145 L.Ed.2d 933 (2000).
Given the humanitarian purpose of the Wage and Hour Law, we construe the exemption narrowly, not broadly. Marx v. Friendly Ice Cream Corp., 380 N.J.Super. 302, 310, 882 A.2d 374 (App.Div.2005) (based on Legislature's remedial purpose in enacting minimum wage law, all exemptions to N.J.S.A. 34:11-56a4 should be construed narrowly); Yellow Cab Co. v. State, 126 N.J.Super. 81, 86, 312 A.2d 870 (App. Div.1973) (same), certif. denied, 64 N.J. 498, 317 A.2d 711 (1974); State v. Comfort Cab, Inc., 118 N.J.Super. 162, 175, 286 A.2d 742 (1972) (Wage and Hour Law is humanitarian and remedial legislation, requiring any exemption to be narrowly construed). For these reasons, the burden of proving entitlement to the exemption is on the employer. Marx, supra, 380 N.J.Super. at 310, 882 A.2d 374.
R & F has not met that burden. Its construction of the definition of trucking industry employer broadens, rather than narrows, the group of employers excluded from the law. It would permit a retail business, simply by locating the storage and delivery aspects of the business in a separate building from those where the business conducts its retail sales, to avoid paying its employees who are engaged in the storage and delivery of the company's merchandise time-and-a-half of their regular wages for hours in excess of 40 per week. Such an interpretation would defeat the essential purpose of the statutory scheme, protecting employees from unfair wages and excessive hours.
The legislative history of the statute supports the Department's position. On July 15, 1996, the Commissioner of the Department of Labor adopted N.J.A.C. 12:56-19, which provided:
Every trucking industry employer shall pay to all drivers, helpers loaders and mechanics for whom the Secretary of Transportation may prescribe maximum hours of work for the safe operation of vehicles pursuant to 49 U.S.C. § 31502(b) an overtime rate not less than one and one-half times the minimum *837 wage required pursuant to N.J.S.A. 34:11-56a4 and N.J.A.C. 12:56-3.1.
[28 N.J.R. 3798(c).]
The rule was promulgated to codify recommendations of a 1995 wage board appointed by the Commissioner of Labor, see 28 N.J.R. 1475(a), which had been convened to address wage issues in the trucking industry, not the retail industry. The rule was subsequently struck down by the Third Circuit Court of Appeals in Keeley, supra, 183 F.3d at 268, which found that the Commissioner exceeded his authority in enacting the rule because, at the time, an exemption from paying the statutory rate of overtime for trucking industry employers was not included in the statute.
In response to Keeley, the Legislature amended the Wage and Hour Law to include the trucking industry employer exemption at issue here, P.L.1999, c. 370. The statement to Assembly Bill 3636, approved on January 14, 2000, stated:
The bill is considered necessary in light of ... Keeley v. Loomis Fargo & Co., which held that the New Jersey Commissioner of Labor exceeded his statutory authority when he promulgated a regulation that excluded certain trucking industry employees from New Jersey's statutory overtime pay requirement. This bill, by inserting the substance of the regulation in P.L.1966, c. 113, would permit these employees to be excluded from the overtime requirement otherwise applicable.
Thus, because the stated intent of P.L. 1999, c. 370 was to "insert the substance of the regulation" struck down by Keeley, supra, and because that regulation had been promulgated to codify recommendations of the 1995 wage board, the record of the 1995 wage board meetings are relevant in determining the meaning and the scope of the trucking industry employer exemption contained in N.J.S.A. 34:11-56a4. See DiProspero, supra, 183 N.J. at 492-93, 874 A.2d 1039 (where plain meaning of statute is at odds with statutory scheme or leads to absurd result, courts may rely on extrinsic evidence, including legislative history, committee reports, and contemporaneous construction).
In referring to the wage board hearings, the Department contends that the wage board's consistent use of the terms and phrases "trucking industry," "administration and operations of trucking companies," "overtime as it relates to the trucking industry," people "in this occupation," "trucking companies," companies "in our association," and "our industry," establish that the exemption is industry-based, applying only to trucking companies. The Commissioner agreed, supra, pp. 7-8, as do we.
A plain reading of the transcripts of the wage board shows that the exemption from the overtime requirement was directed at the trucking industry, not the retail industry. Although nowhere in the transcripts does it explicitly state that the exemption is intended to apply only to trucking companies and movers or storage companies, the clear inference from the nature of the discussions, and from the resulting legislation, leads to such a conclusion. As the Department points out in its brief, the resulting legislation refers to "certain trucking industry employees" who would be "excluded from the overtime requirement otherwise applicable." The "employees to be excluded," when read in context, refers only to trucking and storage industry employees, not to retail industry employees.
R & F contends that Keeley, supra, 183 F.3d at 262-63, provided the Legislature with "clear guidance" that the definition of trucking industry employer was not limited only to trucking companies. The *838 plaintiffs in Keeley, supra, were employees of Loomis Fargo, a successor to Wells Fargo Armored Service Corp. 183 F.3d at 260. Relying on information not referred to in the Keeley decision, R & F asserts that Loomis Fargo is not in the trucking industry, but in the cash handling services industry. Thus, R & F asserts that because the Keeley court stated that "Loomis Fargo is a `trucking industry employer,'" and that "the regulation applies to the present dispute," id. at 262, R & F, although not technically in the trucking industry, similarly must be considered a trucking industry employer so as to qualify for the exemption.
We disagree with that premise. The issue in Keeley was the validity of the regulation itself. Whether Loomis Fargo was a "trucking industry employer" under the regulations was not directly before the court. The opinion did not discuss the characteristics of the company, or why it qualified as a trucking industry employer. For us to do so would constitute mere speculation. Because the court did not discuss why it considered Loomis Fargo to be a trucking industry employer, the case provides no guidance to this court on whether R & F so qualifies.
R & F argues that an employer qualifies for the exemption "if its entire business or if an establishment within such business is primarily operating for the purpose of conveying property from one place to another by road or highway, including the storage and warehousing of goods and property." R & F asserts that because its customer service and distribution centers primarily operate to store and deliver goods, and they are separate and apart from its retail showrooms and overall retail business, R & F qualifies as a "trucking industry employer" vis-à-vis the employees working at those facilities.
In support of its position, R & F relies on the typical meaning of the term establishment, as it is generally understood as a "place of business," rather than an overall business enterprise. See Merriam Webster's Collegiate Dictionary 397 (10th ed.1993) (defines "establishment" as "a place of business or residence with its furnishings and staff").
R & F also relies upon the use of the term in various New Jersey statutes, the case law, and federal regulations. See e.g., N.J.S.A. 43:21-19(g) (defining employing unit for purposes of the unemployment compensation law); N.J.S.A. 34:2-1 (defining manufacturing establishment under the workers' compensation statutes); N.J.S.A. 34:2-21.5 (under child labor law, requiring notices to be posted in establishment where child is employed); A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 495-96, 65 S.Ct. 807, 808-09, 89 L.Ed. 1095, 1100 (1945) (retail grocery stores fell within retail and service establishment exemption under FSLA, 29 U.S.C.A. § 213(a)(2) (repealed), but chain retailer's central office and warehouse facility did not qualify for the exemption because it was not a "retail establishment" within the meaning of the exemption); Ford Motor Co. v. N.J. Dep't of Labor & Industry, 5 N.J. 494, 497, 502, 76 A.2d 256 (1950) (when determining if employee precluded from collecting unemployment compensation because of labor dispute at the "factory, establishment, or other premises" at which employee works, "establishment" refers to "a distinct physical place of business.... such is its normal usage in business and in government."); 29 C.F.R. § 779.23 (FLSA regulations as applied to retailers of goods or services, defining "establishment" as a "distinct place of business" rather than "an entire business or enterprise," which may include several separate places of business).
*839 No doubt, although at first glance, the references, as well as others referred to in R & F's brief, appear to support its position that the term "establishment" is a distinct place of business, they are neither instructive to nor dispositive of the issue presented here. The statutory, case and regulatory references address different legislation with different legislative goals. Our primary goal in interpreting a statute is to determine the Legislature's intent. DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039. And, while statutory words are generally given their ordinary meaning and significance, they must be read in context with related provisions so as to give sense to the legislation as a whole. Ibid. R & F's narrow focus, solely on the common usage of the term establishment, fails to consider the entire statutory scheme and the context in which the term is used. The citations upon which R & F relies are therefore not on point.
For example, in Ford Motor Co., supra, 5 N.J. 494, 76 A.2d 256, the issue was whether certain employees at Ford's New Jersey assembly plants were disqualified for unemployment compensation under a statute that precluded an employee from collecting unemployment compensation if there was a labor dispute at the "factory, establishment, or other premises" at which the employee was "last employed." Id. at 497, 76 A.2d 256 (quoting R.S. 43:21-5(d)). The focus of the case was on the meaning of the phrase "factory, establishment, or other premises." Id. at 497, 76 A.2d 256. The Court construed the term "establishment" as "not embracive of the whole of Ford's far-flung enterprise as a single industrial unit," but as a reference to "a distinct physical place of business." Id. at 502, 76 A.2d 256.
The Court found that the language of the unemployment statute was directed at the specific premises where the labor dispute arose, with the result being that only employees at the specific "factory, establishment, or other premises" at which the dispute arose would be precluded from collecting unemployment benefits. See N.J.S.A. 43:21-5(d). In considering the legislative intent, the Court reasoned that it would be unreasonable to construe the unemployment statute to disqualify workers in a plant in New Jersey from unemployment benefits when the labor dispute existed at a plant in Michigan. Thus, its rationale for deciding that the term establishment constituted a separate place of business is simply not applicable under the circumstances here, where the question is whether a retail business employer should be exempt from paying its employees in its delivery division the statutory rate of overtime under the Wage and Hour Law.
A.H. Phillips, Inc., supra, also fails to support R & F's position. 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095. There, the employer sought an exemption from the FLSA based on the provision of the act that exempted "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." Id. at 491, 65 S.Ct. at 807, 89 L.Ed. at 1098 (quoting 29 U.S.C.A. § 213(a)(2)).
The employer operated forty-nine retail grocery stores in two states. Ibid. It also operated a warehouse, which contained a central office, servicing all forty-nine stores. Id. at 492, 65 S.Ct. at 808, 89 L.Ed. at 1098. The employer argued that the retail stores, office and warehouse together constituted a "retail establishment," thus exempting the business as a whole from the FLSA. Id. at 492-93, 65 S.Ct. at 808, 89 L.Ed. at 1098.
The Court disagreed, holding that the chain retailer's central office and warehouse facility did not qualify the entire business for the exemption because the *840 warehouse and office function, although integrated with the business's retail function, was physically distinct from the retail function. Narrowly construing the exemption to the statute, the Court found that the employer's construction of the statute would be contrary to its legislative purpose. Id. at 496-97, 65 S.Ct. at 810, 89 L.Ed. at 1100-01 Ibid. The Court stated:
Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of the statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.
[Id. at 493, 65 S.Ct. at 808, 89 L.Ed. at 1098-99.]
Thus, although the Court's interpretation of the term establishment as a distinct place of business seemingly supports R & F's position, the Court's reasons for its construction of the term undermine that position. The Court construed the term consistent with, not contrary to, the legislation's intended purpose. R & F's proposed construction of the term in the context of the legislative purpose here would bring about a contrary result.
It bears repeating that our responsibility in interpreting the statute "is to give effect to the legislature's intent." Wildwood Storage Center, Inc. v. Mayor and Council of Wildwood, 260 N.J.Super. 464, 470, 616 A.2d 1331 (App.Div.1992). In doing so, "[w]e must consider `the language of the statute, the nature of the subject matter, the contextual setting, the policy behind the statute, statutes in pari materia, and concepts of reasonableness.'" Id. at 470-71, 616 A.2d 1331 (quoting County of Essex v. Waldman, 244 N.J.Super. 647, 656, 583 A.2d 384 (App.Div.1990)), certif. denied, 126 N.J. 332, 598 A.2d 890 (1991).
Applying these factors here, no dispute exists that R & F is a large retail operation conducting business in many states. The employees who work in the customer service and distribution centers are employed by the same corporate entity as are the employees who work in the retail stores. Extending the exemption to retail industry employers, who conduct their delivery operations at a separate location, would be contrary to the purpose of the wage and hour legislation to protect the health and welfare of employees. It would allow a retail business employer to avoid paying time-and-a-half of the employee's regular wage simply by placing the trucking and delivery operation of its business in a separate building. We cannot conceive that the Legislature contemplated such a result. See County of Essex, supra, 244 N.J.Super. at 656, 583 A.2d 384 (where drafters of statute "did not contemplate a specific situation ... we must interpret the statute consonant with the probable intent of the draftsman had he anticipated the situation at hand") (internal quotations omitted).
R & F points to the disjunctive language of the statute, which defines a trucking industry employer as a "business or establishment primarily operating for the purpose of conveying property from one place to another by road or highway, including the storage and warehousing of goods and property." N.J.S.A. 34:11-56a4. It argues that "if `business' and `establishment' mean the same thing, the word `establishment' is superfluous." See Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 521, 472 A.2d 517 (1984) (construction rendering part of statute superfluous is to be avoided). Again, this argument fails to account for the intent of the *841 Legislature in enacting the Wage and Hour Law.
"[T]he words `or' and `and' are ofttimes used interchangeably, and the determination of whether the word `and' as used in the statute should be read in the conjunctive or disjunctive depends primarily upon the legislative intent." Grant v. Thomas, 307 N.J.Super. 252, 256, 704 A.2d 976 (App.Div.1997) (quoting Howard v. Harwood's Restaurant Co., 25 N.J. 72, 88, 135 A.2d 161 (1957)). "The word `or,' while normally used to indicate disjunctive clauses, has often been interpreted to mean the conjunctive if this is more consistent with legislative intent." Wildwood Storage Center, supra, 260 N.J.Super. at 471, 616 A.2d 1331. Given the policy goals of the Wage and Hour Law, and the legislative history of the exemption, we read the word "or" in the conjunctive, with the words "business" and "establishment" having the same general meaning in the definition of trucking industry employer. See Ford, supra, 5 N.J. at 502, 76 A.2d 256 ("The force of the term is on well-settled principles restrained by the accompanying words and the declared policy of the statute and the means employed for its execution. Ordinarily, the coupling of words denotes an intention that they shall be understood in the same general sense.").
In context, the statute here is susceptible to more than one interpretation. Because we perceive that R & F's construction would be contrary to the legislative intent underlying the Wage and Hour Law, we agree with the Commissioner that the term establishment as used in N.J.S.A. 34:11-56a4 does not simply mean a separate location of one branch of a complete business enterprise, but in fact refers to the business itself, which must primarily operate to transport property by road from one place to another. Accordingly, we reject R & F's arguments and affirm the Commissioner's decision.

III
R & F's final argument is that the trucking industry employer exemption is void for vagueness as applied to R & F. We disagree.
A statute can be challenged "as applied" if the statute does not prohibit with sufficient clarity the conduct against which the statute is to be enforced. State v. Cameron, 100 N.J. 586, 593, 498 A.2d 1217 (1985). A statute that is challenged as applied need not be proved vague in all conceivable contexts, but must be shown to be unclear in the context of the particular case. Id. at 594, 498 A.2d 1217.
Civil statutes in general, and economic regulations in particular, are subject to less stringent scrutiny under the vagueness doctrine than are criminal statutes. Id. at 592, 498 A.2d 1217. A commercial regulatory statute can be held unconstitutionally vague only if it is "substantially incomprehensible." In re Loans of N.J. Property Liab. Ins. Guar. Ass'n, 124 N.J. 69, 78, 590 A.2d 210 (1991) (quoting Exxon Corp. v. Busbee, 644 F.2d 1030, 1033 (5th Cir.)), cert. denied, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). "[V]agueness is not a linguistic analysis conducted in a vacuum but requires consideration of the questioned provision itself, related provisions, and the reality in which the provision is to be applied." State v. Saunders, 302 N.J.Super. 509, 521, 695 A.2d 722 (App.Div.), certif. denied, 151 N.J. 470, 700 A.2d 881 (1997) (internal quotation omitted).
Here, the trucking industry employer exemption is not "substantially incomprehensible" as to deem the statute void for vagueness as applied to R & F. Reviewing the language of the entire provision, and *842 the exemption's legislative history, it is sufficiently clear that the exemption was intended to be limited in its application only to those businesses primarily engaged in the trucking business, not to retail business with a trucking component.
Affirmed.
NOTES
[1] "If the [Commissioner of Labor] is of the opinion that a substantial number of employees in any occupation ... are receiving less than a fair wage, he shall appoint a wage board ... to report upon the establishment of minimum fair wage rates for employees in such occupation...." N.J.S.A. 34:11-56a8.