NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2378-17T4

GLORIA COLON, DIANA
MEJIA and FREDDY DIAZ,
on behalf of themselves and
all other similarly situated
persons,

Plaintiffs-Appellants,

v.

STRATEGIC DELIVERY
SOLUTIONS, LLC, and
MYRIAM BARRETO,

Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

June 4, 2019

APPELLATE DIVISION

Argued January 29, 2019 – Decided June 4, 2019

Before Judges Hoffman, Suter and Firko.

On appeal from Superior Court of New Jersey, Law
Division, Union County, Docket No. L-3994-16.

Ravi Sattiraju argued the cause for appellants (The
Sattiraju Law Firm, PC, attorneys; Ravi Sattiraju, of
counsel and on the brief; Carole Lynn Nowicki, on the
brief).

Patrick W. McGovern argued the cause for respondents
(Genova Burns, LLC, attorneys; Patrick W. McGovern,
of counsel and on the brief; Shawn M. Lopez, on the
brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Plaintiffs Gloria Colon, Diana Mejia and Freddy Diaz appeal the January 2, 2018 summary judgment order that dismissed their class action complaint and jury demand. The order required mandatory binding arbitration on an individual basis of their wage and hour claims against defendants Strategic Delivery Solutions, LLC (SDS) and Myriam Barreto.[1] We vacate the order of dismissal, and reinstate the complaint for the trial court to determine whether plaintiffs were engaged in transportation services in interstate commerce and thus, exempt under the Federal Arbitration Act (FAA), 9 U.S.C. §§1-16. If the FAA does not apply to plaintiffs, we hold that the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -32, applies and requires arbitration of their claims. We also hold that plaintiffs waived a trial by jury and the ability to proceed as a class action under their agreements with SDS.

SDS is licensed by the United States Department of Transportation as a freight forwarder and freight broker. It arranges for the local delivery of pharmaceutical products and general merchandise to its customers. Plaintiffs

---

[1] The complaint incorrectly identified SDS as "Strategic Delivery Systems, LLC" and Myriam Barreto as "Myrian Barreto."

A-2378-17T4

each signed identical "Independent Vendor Agreement[s] for Transportation Services" with SDS in which they said they owned and operated a business that provided transportation services.  Plaintiffs agreed to provide transportation services as independent contractors for SDS's customers.  The agreements covered various issues: transportation needs, rate of compensation, payment, fringe benefits, vehicles, signage, uniforms, badges, tools, equipment, insurance, indemnification, and termination of the agreements.

Paragraph 19 of the agreement provided that the law of the state of residence of the "vendor" would apply, meaning that for these plaintiffs, New Jersey law governed the agreement, "including its construction and interpretation, the rights and remedies of the parties hereunder, and all claims, controversies or disputes (whether arising in contract or tort) between the parties."  Plaintiffs also agreed in paragraph 19(b) to waive "any right to a trial by jury in any suit filed hereunder and agree to adjudicate any dispute pursuant to [p]aragraph 20 . . . ."  Paragraph 20 addressed arbitration and the waiver of class actions.

Plaintiffs alleged they worked out of SDS's facility in Elizabeth from February 2015 to March 2016 performing "truck driving and . . . delivery functions."  They claimed SDS made "unlawful deductions" from their

compensation in violation of the New Jersey Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to 4.14. They contended they were misclassified by SDS as independent contractors and should have been classified as employees. Plaintiffs alleged they should have been paid one-and-a-half their hourly rate for work in excess of forty hours per week and SDS's failure to do so violated the New Jersey Wage and Hour Law (WHL), N.J.S.A. 34:11-56a to -56a38.[2]

In December 2016, plaintiffs filed suit against defendants on behalf of themselves and as a class action on behalf of other "similarly situated persons," for violation of the WHL and WPL, and demanded a jury trial. Defendants filed a motion to dismiss the complaint and to compel plaintiffs to arbitrate these claims on an individual basis, not as a class. Defendants relied on paragraphs 19 and 20 of the agreement, arguing that plaintiffs agreed to waive a jury trial, to proceed on an individual (non-class) basis, and to have their claims heard in binding arbitration. Plaintiffs opposed the motion, arguing they were exempt from arbitration under the FAA, and that they had not waived their right to a jury trial or class action relief under the WHL or WPL.

---

[2] The WPL "governs the time and mode of payment of wages due to employees." Hargrove v. Sleepy's, LLC, 220 N.J. 289, 302 (2015). "The WHL is designed to 'protect employees from unfair wages and excessive hours.'" Id. at 304 (quoting In re Raymour & Flanigan Furniture, 405 N.J. Super. 367, 376 (App. Div. 2009)).

4

The trial court granted defendants' motion, treating it as a summary judgment motion, because the parties relied on materials not referenced in the complaint. See R. 4:6-2. The court concluded in its Statement of Reasons that plaintiffs waived their right to a jury trial in paragraph 20 of the agreement, comparing the language there to "analogous" language in Martindale v. Sandvik Inc., 173 N.J. 76 (2002). The court found that plaintiffs' agreement to arbitrate was "clear and unambiguous" and constituted a "valid and enforceable arbitration agreement." "Similarly, the [w]aiver to [j]oin a [c]lass provision [was] clear and unambiguous . . . valid and enforceable." The trial court's order required plaintiffs to adjudicate their WHL and WPL claims through arbitration. The court did not expressly address plaintiffs' claims against Barreto.

I

The validity of a contractual provision that requires arbitration is a question of law. See Hirsch v. Amper Financial Services, LLC, 215 N.J. 174, 186 (2013). We review the court's order that required arbitration of these claims on a de novo basis. Ibid.; see Atalese v. U.S. Legal Servs. Group, 219 N.J. 430, 446 (2014).

Paragraph 20 of the agreement provided as follows:

> (a) Agreement to Arbitrate. The parties agree to comply and be bound by the Federal Arbitration Act.

A-2378-17T4

The parties agree that any dispute, difference, question, or claim arising out of or any way relating to this Agreement or the transportation services provided hereunder shall be subject to binding arbitration in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA") in effect at the time such arbitration is initiated. The parties agree that the issue of arbitrability shall be determined by the arbitrator applying the law of the state of residence of the Vendor. The parties shall bear their own costs including, without limitation, attorneys' fees, and shall each bear one half (1/2) of the fees and costs of the arbitrator . . . selected from a list of potential arbitrators provided by the AAA . . . . Nothing in this Agreement shall be construed as limiting or precluding the parties from bringing any action in any court of competent jurisdiction for injunctive or other extraordinary relief, in the event the arbitrator determines that it does not have jurisdiction to order such relief. The parties shall have the immediate right to seek such injunctive or other extraordinary relief at anytime . . . .

Arbitration is a matter of contract. NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011). "An agreement to arbitrate, like any other contract 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese, 219 N.J. at 442 (quoting Foulke, 421 N.J. Super. at 424). "Parties are not required 'to arbitrate when they have not agreed to do so.'" Ibid. (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr., Univ., 489 U.S. 468, 478 (1989)).

6

In the "Agreement to Arbitrate" portion of paragraph 20, the parties agreed "to comply and be bound by the [FAA]." Plaintiffs contend that as employees engaged in interstate transportation, they are exempt under section one of the FAA. 9 U.S.C. §1. Because the agreement does not reference the NJAA, plaintiffs contend they are not required to arbitrate these claims. We agree that the trial court, and not an arbitrator, was required to determine whether plaintiffs were engaged in interstate transportation services under the FAA. Because the court did not make that determination, we vacate the dismissal order and reinstate the complaint. On remand, the trial court must determine whether plaintiffs are exempt under section one of the FAA.

Congress enacted the FAA to "reverse the longstanding judicial hostility towards arbitration . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). "[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements." Circuit City Stores v. Adams, 532 U.S. 105, 111 (2001). It applies to a written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . ." 9 U.S.C. § 2. The phrase "involving commerce" in section two of the FAA has been broadly construed "as

implementing Congress' intent to 'exercise [its] commerce power to the full.'" Circuit City, 532 U.S. at 112 (quoting Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277 (1995)).

Plaintiffs focus their argument on section one of the FAA that contains exemptions from coverage. Specifically, the FAA shall not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The United States Supreme Court has construed this section as exempting "from the FAA only contracts of employment of transportation workers." Circuit City, 532 U.S. at 119. Recently, the Court has determined that a "contract of employment," as used in section one of the FAA, "referred to agreements to perform work," regardless of whether the relationship was characterized as a master-servant relationship or an independent contractor relationship. New Prime, Inc. v. Oliveira, 586 U.S. __, 139 S. Ct 532, 542 (2019). Thus, an agreement where the parties agree to provide transportation services on an interstate basis falls under section one of the FAA whether or not the agreement is to provide the services as an employee or as an independent contractor. Ibid.

The trial court did not determine whether plaintiffs were providing transportation services on an interstate basis. Defendants contend the contracts

referred to "local delivery services." The complaint alleged that plaintiffs performed services as truck drivers "for customers throughout New Jersey and surrounding areas." The record does not indicate whether the parties conducted discovery on this issue. In the absence of discovery, it was premature to grant summary judgment. See Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193 (1988). Because this is an issue for the trial court to determine, Oliveira, 586 U.S. at __, 139 S. Ct. at 538 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402 (1967)), we vacate the summary judgment order and remand this issue to the trial court.

Giving all favorable inferences to the non-moving party as we must at this juncture under Rule 4:46-2(c), we assume that plaintiffs were performing transportation services in interstate commerce that would exempt them from the FAA. Plaintiffs argue we should not apply the NJAA to require arbitration. They argue that the parties did not intend to arbitrate if the FAA did not apply.

Both the FAA and NJAA favor arbitration as a means of resolving disputes. See Atalese, 219 N.J. at 440. The NJAA "governs all agreements to arbitrate made on or after January 1, 2003," with the exception of arbitration agreements as part of a collective bargaining agreement. N.J.S.A. 2A:23B-3(a). The parties' agreement expressly referenced the FAA. If the FAA applies, then

it applies "in state courts and . . . [preempts] state antiarbitration laws to the contrary." Circuit City, 532 U.S. at 122 (citing Southland Corp. v. Keating, 465 U.S. 1, 16 (1984)). In this case, if plaintiffs are not engaged in interstate commerce, then the FAA's section one exemption would not apply (assuming they are providing transportation services), and plaintiffs would be required to arbitrate their claims under the FAA. If they are engaged in interstate commerce and exempt under the FAA, the issue is whether that exemption preempts application of the NJAA. We hold that it does not.

The Supreme Court has stated that "[t]he FAA contains no express pre-emptive provision nor does it reflect a congressional intent to occupy the entire field of arbitration." Volt, 489 U.S. at 477. The Third Circuit has held "[t]here is no language in the FAA that explicitly preempts the enforcement of state arbitration statutes." Palcko v. Airborne Express, Inc., 372 F.3d 588, 595 (3d Cir. 2004). Thus, under Palcko, the NJAA could be applied even if the FAA did not apply.

Plaintiffs argue Palcko is distinguishable from this case. The agreement in Palcko included reference to the FAA, and said that if the FAA were not applicable, "Washington law pertaining to agreements to arbitrate shall apply." We do not agree that this reference in Palcko means the NJAA does not apply

in the present case. The NJAA governs arbitration agreements in New Jersey made after January 1, 2003. N.J.S.A. 2A:23B-3. Therefore, the parties should have understood that the NJAA would apply to their agreement. The agreement expressly provided that it was governed by the state law where the vendor resided, which in this case meant New Jersey. The agreement did not say that the NJAA did not apply. Their detailed arbitration provision showed they intended to arbitrate disputes. Otherwise, given their contention they are exempt under the FAA, there was no reason to include any reference to arbitration. Because the FAA did not preempt application of the NJAA in this context, we conclude that even if plaintiffs are exempt under section one of the FAA, they still are required to arbitrate their claims under the NJAA.

The trial court must determine in the first instance if the FAA applies. We are constrained to reinstate the complaint and remand that issue to the trial court. However, if plaintiffs were engaged in transportation services in interstate commerce, meaning that they are exempt under the FAA, we will enforce the arbitration provision under the NJAA.

II

Plaintiffs argue that the court erred by dismissing their complaint because they did not waive their right to a jury trial on the wage and payment claims and

did not waive the ability to pursue these claims on a class action basis. We agree with defendants that plaintiffs waived both of these rights.

A

The agreement provided in paragraph 19(b) that the "parties voluntarily agree to waive any right to trial by jury in any suit filed hereunder and agree to adjudicate any dispute pursuant to [p]aragraph 20 below." Plaintiffs contend they are entitled to a jury trial on their wage and payment claims because those claims are based on statutes, not contracts. Thus, they argue if they must arbitrate under their agreements, they should not be required to arbitrate the WHL or WPL claims. We disagree.

"An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." Atalese, 219 N.J. at 442 (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). Arbitration is an alternative method of resolving disputes and "substitute[s] for the right to have one's claim adjudicated in a court of law." Ibid. Whenever a consumer waives constitutional or statutory rights through a contractual waiver-of-rights provision, our courts have required a showing that the party "'has agreed clearly and unambiguously' to its terms." Id. at 443 (quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)). "[B]ecause arbitration involves a waiver of the right

to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Id. at 442-43 (quoting Foulke, 421 N.J. Super. at 425).

Plaintiffs clearly and unambiguously "waive[d] any right to a trial by jury in any suit" in paragraph 19(b) of their agreement and "agreed to adjudicate any dispute pursuant to [p]aragraph 20 below." Paragraph 20 is captioned "Arbitration and Waiver To Join A Class," with the first subsection entitled "Agreement to Arbitrate." This waiver is similar to the waiver provision in Martindale, 173 N.J. at 81-82. There, the Court upheld the validity of an arbitration clause where the plaintiff "agreed 'to waive [her] right to a jury trial' and that 'all disputes relating to [her] employment . . . shall be decided by an arbitrator.'" Atalese, 219 N.J. at 444 (alterations in original) (quoting Martindale, 173 N.J. at 81-82). We are satisfied that paragraph 19 of the agreement was clear and unambiguous and that plaintiffs in this case were "choosing to arbitrate disputes rather than have them resolved in a court of law." See id. at 447.

This result does not change because plaintiffs' claims arose under the WHL and WPL. A statutory claim under the usury law was at issue in Atalese;

a claim under the Law Against Discrimination was at issue in <u>Garfinkel v. Morristown Ob-gyn Assocs.</u>, 168 N.J. 124, 127 (2001). Although the Court reversed the order to arbitrate in <u>Garfinkel</u> because of ambiguity in the arbitration clause, the Court did not hold that statutory claims per se could not be subject to arbitration. Further, unlike <u>Garfinkel</u>, the arbitration provision in this case was not limited to claims under the agreement; it broadly included claims "arising out of or in any way relating to" the "transportation services provided thereunder." The Court noted in <u>Atalese</u> that "no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights." 219 N.J. at 447. We are satisfied that the arbitration clause was broad enough and clear enough to include plaintiffs' statutory claims.

The waiver provision in paragraph 19(b) had two components: plaintiffs voluntarily agreed to waive any right to a jury trial "in any suit filed hereunder <u>and</u> agree[d] to adjudicate any dispute pursuant to [the agreement to arbitrate]." (emphasis added). Because the two concepts—jury trial waiver and arbitration—are linked in the same sentence by the conjunction "and," we understand plaintiffs to have waived their right to pursue a jury trial based on, or made in conjunction with, the provision of binding arbitration. Because

plaintiffs are required to arbitrate under the FAA or NJAA, we hold that plaintiffs waived their right to a jury trial on the wage and payment law issues.

B

The trial court ordered "mandatory binding arbitration on an individual basis." Plaintiffs argue they did not waive their ability to pursue their claims as a class. We agree with defendants that plaintiffs' waiver was "clear and unambiguous."

Paragraph 20(b) of the agreement provided:

> any arbitration, suit, action or other legal proceeding arising out of or in any way relating to this Agreement or the services provided thereunder shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, collective or similar basis unless mutually agreed to in writing by all interested parties.

In contrast to the jury trial waiver provision, the class-action waiver was not linked to the arbitration requirement; it was a separate subsection under paragraph 20. Also, it made clear that the class action waiver applied to any type of remedy—"arbitration, suit, or other legal proceeding." We are mindful of the Court's holding in Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 15-16 (2006), that found a class-arbitration waiver in a consumer contract of

adhesion to be unconscionable. [3]  But, this case does not involve a class-arbitration waiver and it was not a consumer contract.  The waiver language in this case was clear and unambiguous.  See Gras v. Assocs. First Capital Corp., 346 N.J. Super. 42, 57 (App. Div. 2001) (affirming an order enforcing arbitration and a waiver of rights, including any right to proceed as a class against defendant).  We affirm the court's order that required plaintiffs to arbitrate their WHL and WPL claims on an individual (non-class) basis.

Recent case law has resolved against plaintiffs, the claim that the class action waiver provision is violative of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169.  See Epic Sys. Corp. v. Lewis, 584 U.S. __, 138 S.Ct. 1612, 1628 (2018) (providing that "[n]othing in our cases indicates that the NLRA guarantees class and collective action procedures . . . .").

III

Plaintiffs contend the court should not have dismissed its claims against defendant Barreto.  The complaint alleges that Barreto was plaintiffs' employer as that term is defined by the WHL and WPL.  The court's Statement of Reasons

---

[3]  The validity of Muhammad has been questioned.  See Litman v. Cellco P'ship, 655 F.3d 225, 231 (3d Cir. 2011) (holding that the "rule established by the New Jersey Supreme Court in Muhammad is preempted by the FAA").  Litman based its holding on AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011).

did not provide any analysis for its order that apparently dismissed Barreto or explain why claims against her were subject to binding arbitration under the agreements.

Rule 1:7-4(a) requires the court to "find the facts and state its conclusions of law . . . on every motion decided by a written order that is appealable as of right . . . ."  The court did not supply its reasoning; we are constrained to remand this issue.

After careful review of the record and legal principles, we conclude that plaintiffs' further arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Vacated and remanded for further proceeding consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-2378-17T4