# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2065-19T2

M.J.,[1]

    Plaintiff-Appellant,

v.

A.M.,

    Defendant-Respondent.

_____

Submitted December 7, 2020 – Decided December 21, 2020

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-1291-20.

South Jersey Legal Services, attorneys for the appellant (John Pendergast, of counsel and on the brief; Kenneth M. Goldman, on the brief).

Respondent has not filed a brief.

---

[1] We refer to the parties by initials in accordance with Rule 1:38-3(d)(10).

PER CURIAM

Plaintiff M.J., the sister of defendant A.M., appeals from a December 12, 2019 order dismissing her domestic violence complaint and dissolving a temporary restraining order (TRO). We vacate and remand.

Plaintiff filed a domestic violence complaint and obtained a TRO on November 11, 2019. In her complaint, she asserted defendant committed criminal mischief when he smashed her car window.

One week later, plaintiff amended her domestic violence complaint, providing additional information regarding the parties' relationship and the argument between plaintiff and defendant immediately prior to the breaking of the car window. In her amended complaint, plaintiff alleged defendant committed the predicate acts of harassment and criminal mischief.

On December 12, 2019, the Family Part judge conducted a domestic violence trial. At trial, plaintiff was represented by counsel, and defendant was self-represented. The following witnesses testified at the trial: plaintiff, two police officers who responded to the report of a domestic dispute, defendant's nephew, and the nephew's girlfriend.

The following facts were adduced during the trial. Plaintiff lived with defendant and seven other people in a home owned by her deceased mother. On

November 11, unbeknownst to plaintiff, five people were moving out of the house. Defendant asked plaintiff to move her car to allow him to load the moving van. Plaintiff explained she needed to change out of her pajamas and into warmer clothes and brush her teeth before moving her car. According to plaintiff, defendant became aggressive and screamed at her, calling her ugly names. Plaintiff was heading upstairs when she heard glass shatter. Upon investigating the noise, plaintiff saw the driver's side window and mirror on her car were smashed, and she found glass and blood inside the car.

Plaintiff confronted defendant, who was inside the home using a hammer and wearing a white latex glove. She asked if defendant broke the car window and mirror. While plaintiff did not see defendant's hand, she saw a trail of blood from the front door of the house into the kitchen. Defendant denied breaking the window and mirror and claimed he saw kids throw a brick at the car window. However, plaintiff found no brick or large stone in or near her car. Plaintiff then called the police because she believed defendant damaged her car.

Plaintiff told the judge about prior incidents with defendant. She testified defendant had a "very bad temper," was "very aggressive," and "at times would threaten to hit her." She also explained defendant insulted her frequently, and the insults were especially hurtful because of her deep religious faith.

3

Plaintiff testified she was afraid of defendant based on his "aggressiveness," "verbal attacks," and repeated threats to hit her. Plaintiff explained she "fear[ed] for [her] life" as a result of defendant's statements and conduct.

The two police officers who investigated the domestic disturbance testified. Despite security camera footage from the scene, no one was observed near plaintiff's car because her car was obstructed by the moving truck. Nor were there any juveniles seen in the camera footage to support defendant's claim that kids broke the car window. One officer testified there were no bricks or large stones near the car. However, the footage showed "a male pacing back and forth, [who] at one point looks up to the door of the house." Based on the camera footage, the officer's observations, the police found probable cause to charge defendant with criminal mischief.

One of the officers interviewed plaintiff. In his report, the officer recorded that plaintiff and defendant argued over plaintiff not moving her car. According to the police report, plaintiff did not see the incident but believed defendant broke the car window. Plaintiff told the officer that just before she heard the sound of shattering of glass, defendant said, "You don't want to move

4

[the car], guess what?" In his report, the officer noted defendant's hand was bleeding.

At trial, defendant called his nephew as a witness. The nephew said he was standing with his girlfriend at the front door of the house, watching to ensure nothing was stolen from the moving truck. The nephew testified he saw "kids" smash plaintiff's car window. The nephew reported the incident to defendant, and defendant then removed shattered glass from plaintiff's car. He also saw plaintiff and defendant talking and heard plaintiff say defendant would not "get away with this . . . ." Because the nephew watched the moving truck, he did not leave the front door area during the incident. The nephew, who lived in the house with plaintiff and defendant, testified he had a closer relationship with defendant than with plaintiff.

The nephew's girlfriend confirmed the nephew's testimony. According to her testimony, she saw defendant and another family member move a washing machine, then observed shattered glass on the sidewalk, and called for help while "two young kids" ran away from the scene. When defendant responded to the call for help, the girlfriend saw defendant's hand was bleeding but did not see how defendant hurt his hand. The girlfriend also saw plaintiff examine her car and heard plaintiff accuse defendant of damaging the car.

5

Defendant did not testify during the trial. However, he gave a closing argument. Defendant explained plaintiff created problems in the family, and the family tried multiple times to help plaintiff to no avail. Defendant disputed plaintiff's claims, asserted plaintiff's contentions were "ridiculous," and asked the judge to dismiss plaintiff's case.

After hearing the testimony, the judge denied plaintiff's request for the entry of a final restraining order (FRO) and dismissed the complaint. In a brief ruling, the judge reasoned:

> [T]he plaintiff has not been able to prove . . . a predicate act. We spent, frankly, an exceedingly enormous amount of time on a broken car window, and that is not a predicate act of domestic violence of -- in and of it by itself.
> The testimony from the police officers, obviously, they believe that they had probable cause to make an arrest under criminal mischief. But, again, that does not lead us to domestic violence.
> I know that there have been insults that have been, frankly, sounds thrown primarily at the plaintiff. But that, again, does not rise to the level of domestic violence.
> I am sorry for all that you have gone through. I am sorry for the damage to your car. But there is just not enough before me to day [sic] to find that a restraining order against your brother is warranted under the domestic violence statute.

The judge made no credibility determinations and ultimately dismissed the TRO, finding plaintiff's allegations had not been substantiated.

A-2065-19T2

On appeal, plaintiff contends the judge erred in denying her request for an FRO because defendant's smashing of her car window constituted a predicate act under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.

Our review of plaintiff's appeal is hampered by the absence of specific findings of fact, credibility determinations, and conclusions of law. Given the divergent testimony proffered on behalf of the parties, it was imperative the judge render fact findings and credibility determinations to support her conclusions.

Rule 1:7-4(a) requires a court "find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ." "Trial judges are under a duty to make findings of fact and to state reasons in support of their conclusions." Giarusso v. Giarusso, 455 N.J. Super. 42, 53 (App. Div. 2018) (quoting Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996)). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Ibid. (quoting Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008)). "Naked conclusions do not satisfy the purpose of [Rule] 1:7-4." Id. at 54 (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)). Thus, when a trial court does not "supply its reasoning[,]" an appellate court is

"constrained to remand [on that] issue." Colon v. Strategic Delivery Sols., LLC, 459 N.J. Super. 349, 364 (App. Div. 2019). Although our standard of review is generally limited in Family Part matters, where inadequate factual findings are made or where issues are not addressed, we are constrained to remand for further proceedings. Cesare v. Cesare, 154 N.J. Super. 394, 411-13 (1998) (indicating the appellate scope of review is limited and family court judges should be given deference in matrimonial matters because of their "special expertise"). But see Elrom v. Elrom, 439 N.J. 424, 443 (App. Div. 2015) (stating a trial judge's failure to make critical findings will result in remand).

Here, the judge briefly stated her conclusions but provided no detailed findings of fact or credibility determinations regarding the conflicting witness testimony. Nor did she specifically articulate her reasons for denying of the FRO. Thus, we are unable to determine if her legal conclusions are supported by the record.

Given the contested facts based on the trial testimony, and the absence of credibility determinations, we are constrained to vacate the December 12, 2019 dismissal order, reinstate the TRO, and remand to the trial judge for amplified findings of fact, credibility determinations, and legal conclusions based on the existing record. The judge should expressly determine whether plaintiff proved

defendant committed the predicate act of criminal mischief, and, if so, whether plaintiff met the two-prong test in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), entitling her to the entry of an FRO.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION