SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Essam Arafa v. Health Express Corporation (A-6-19) (083174)**
**Gloria Colon v. Strategic Delivery Solutions, LLC (A-7-19) (083154)**

**Argued March 2, 2020 -- Decided July 14, 2020**

**FERNANDEZ-VINA, J., writing for the Court.**

These appeals involve arbitration agreements in contracts for employment that, plaintiffs argue, fall within the "exemption clause" of the Federal Arbitration Act (FAA), 9 U.S.C. § 1 (section 1). The question posed in both cases is whether the disputed arbitration agreements would be enforceable under the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36, if they are exempt from the FAA.

In Colon, defendant Strategic Delivery Systems, LLC (SDS) is a licensed freight forwarder and broker. Each plaintiff entered into an identical employment agreement with SDS. Directly at issue are Paragraphs 19 (providing that the laws of the Vendor's state of residence govern the agreement), 20 (an "Agreement to Arbitrate," including an agreement to be bound by the FAA, as well as a "Voluntary Waiver to Join a Class"), and 24 (severance clause) of the employment agreements. Plaintiffs filed a class action complaint against SDS, alleging that SDS violated New Jersey laws by failing to pay overtime wages and illegally withholding monies.

The trial court granted SDS's motion to dismiss and compel arbitration. The Appellate Division substantially agreed with the trial court, holding that plaintiffs waived their right to a jury trial. 459 N.J. Super. 349, 360 (App. Div. 2019). The appellate court remanded, however, for a determination of whether plaintiffs were engaged in interstate transportation because, "if plaintiffs are not engaged in interstate commerce, then the FAA's section one exemption would not apply (assuming they are providing transportation services), and plaintiffs would be required to arbitrate their claims under the FAA." Id. at 359. If on the other hand plaintiffs "are engaged in interstate commerce and exempt under the FAA," then the court "will enforce the arbitration provision under the NJAA." Id. at 359-60. The Colon court likewise found that plaintiffs had clearly and unambiguously waived their ability to proceed as a class on their statutory claims, distinguishing this case from Muhammad v. County Bank of Rehoboth Beach, DE, 189 N.J. 1, 15-16 (2006), in which the Court found unconscionable a class-arbitration waiver embedded in a consumer contract of adhesion, because Colon "does not involve a class-arbitration waiver and it was not a consumer contract." 459 N.J. Super. at 363.

1

In Arafa, plaintiff began working for defendant Health Express Corporation (Health Express) in April 2016. He was hired to deliver medicines and pharmaceutical products from pharmacies and medical offices in New Jersey to customers throughout the state and in surrounding areas. Plaintiff signed an employment agreement and an arbitration agreement with Health Express. The arbitration agreement indicated that it "is governed by the [FAA]." It contained both a "Class Action Waiver" and an "Enforcement Clause" providing that "in the event any portion of this Agreement is deemed unenforceable, the remainder of it will be enforceable." Plaintiff filed a class action complaint against Health Express, alleging violations of New Jersey's Wage and Hour and Wage Payment Laws, among other claims.

The trial court granted Health Express's motion to dismiss and compel arbitration and ordered the class to pursue all claims in arbitration on an individual basis. The Appellate Division reversed, holding that plaintiff was exempt from the FAA and its requirements concerning arbitration under section 1 and that the inapplicability of the FAA undermined the entire premise of the parties' contract.

The Court granted plaintiffs' petition for certification in Colon, 239 N.J. 519 (2019), and Health Express's petition for certification in Arafa, 239 N.J. 516 (2019).

**HELD:** The NJAA may apply to arbitration agreements even if parties to the agreements are exempt under section 1 of the FAA. Therefore, the parties in both Colon and Arafa are not exempt from arbitration and their arbitration agreements are enforceable. In Arafa, the arbitration agreements are enforceable under the NJAA. In Colon, the arbitration agreements are enforceable under either the FAA or the NJAA, which will be determined by the trial court upon remand when it resolves whether the employees in that case were transportation workers engaged in interstate commerce.

1. The FAA has a liberal federal policy of favoring arbitration and requires courts to enforce arbitration agreements according to their terms. It preempts any state rule discriminating on its face against arbitration. Significantly, however, the FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. And, although the FAA preempts state laws that treat arbitration agreements differently from other contracts, the FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements, under general contract principles. (pp. 18-19)

2. Section 1 of the FAA -- the "exemption clause" -- provides the FAA shall not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has interpreted "or any other class of workers engaged in foreign or interstate commerce" to mean that "[s]ection 1 exempts from the FAA only contracts of employment of transportation workers" so engaged. Circuit City Stores, Inc. v. Adams, 532 U.S. 105,

2

119 (2001) (emphasis added).  Thus, for section 1 to apply and exclude from the FAA the arbitration agreement in Colon, it would have to be determined that plaintiffs in that case are transportation workers engaged in interstate commerce.  In Arafa, meanwhile, it is undisputed that section 1 applies.  As the panel in that case observed, the Supreme Court has held that section 1 of the FAA is not limited to employees because the term "workers" includes independent contractors.  See New Prime Inc. v. Oliveira, 139 S. Ct. 532, 540-41 (2019).  Section 1 therefore encompasses plaintiff's contract.  (pp. 19-21)

3.  New Jersey law governs the contracts at issue in both Colon and Arafa.  The relevant New Jersey law is the NJAA, which is nearly identical to the FAA and enunciates the same policies favoring arbitration.  The Court reviews the provisions of N.J.S.A. 2A:23B-3 and explains that, for arbitration agreements forged since 2003, there has been no need to express an intent that the NJAA would apply because its application has been automatic, absent preemption.  The Court therefore rejects any argument that the absence of an express invocation of the NJAA means that it cannot apply.  No express mention of the NJAA is required to establish a meeting of the minds that it will apply inasmuch as its application is automatic.  The Court thus finds that the NJAA will apply to the agreement in Arafa and may apply to the agreement in Colon if it is determined upon remand that section 1 applies.  (pp. 21-26)

4.  In addition to a clear and unambiguous waiver of statutory claims, an agreement to arbitrate must be the product of mutual assent.  The Court reviews the arbitration agreements in Colon, which are enforceable, and finds that plaintiffs' statutory wage claims fall within the scope of those agreements.  The Court agrees with the Appellate Division that Muhammad does not apply here and that plaintiffs knowingly and voluntarily waived their ability to proceed as a class.  Turning to the waiver in Arafa, the Court likewise concludes the jury trial waiver in that case was knowing and voluntary. (pp. 26-30).

> **As to Arafa:  REVERSED.**
> **As to Colon:  AFFIRMED and REMANDED for further proceedings.**

> **JUSTICE ALBIN, concurring in the judgment and dissenting in part,** concurs that the NJAA either governs or may govern the applicability of the arbitration agreements in these cases but believes that the class-waiver provisions are unconscionable and unenforceable, generally for the policy reasons explained in Muhammad, 189 N.J. at 16-18.  Justice Albin respectfully dissents to the extent that the Court's opinion in any way undermines the beneficent purposes of Muhammad.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE ALBIN, concurring in the judgment and dissenting in part, filed a separate opinion.**

3

SUPREME COURT OF NEW JERSEY

A-6 September Term 2019

A-7 September Term 2019

083174 and 083154

Essam Arafa, on behalf
of himself and others
similarly situated,

Plaintiff-Respondent,

v.

Health Express Corporation,

Defendant-Appellant.

Gloria Colon, Diana Mejia and Freddy Diaz,
on behalf of themselves and all other
similarly situated persons,

Plaintiffs-Appellants,

v.

Strategic Delivery Solutions, LLC,
and Myriam Barreto,

Defendants-Respondents.

Essam Arafa v. Health Express Corporation
(A-6-19): On certification to the Superior Court,
Appellate Division.

1

Gloria Colon v. Strategic Delivery Solutions, LLC
(A-7-19): On certification to the Superior Court,
Appellate Division, whose opinion is reported at
459 N.J. Super. 349 (App. Div. 2019).

Argued                          Decided
March 2, 2020                   July 14, 2020

Ivan R. Novich argued the cause for appellant in
Essam Arafa v. Health Express Corporation (Littler
Mendelson, attorneys; Ivan R. Novich and Dylan C.
Dindial, of counsel and on the briefs, and Michael T.
Grosso, on the briefs).

Ravi Sattiraju argued the cause for respondent in
Essam Arafa v. Health Express Corporation and for
appellants in Gloria Colon v. Strategic Delivery
Solutions, LLC (The Sattiraju Law Firm, attorneys;
Ravi Sattiraju, of counsel and on the briefs, and
Anthony S. Almeida, on the briefs).

Patrick W. McGovern argued the cause for
respondents in Gloria Colon v. Strategic Delivery
Solutions, LLC (Genova Burns, attorneys; Patrick W.
McGovern, of counsel and on the briefs).

William D. Wright argued the cause for amicus curiae
New Jersey Association for Justice in Essam Arafa v.
Health Express Corporation and in Gloria Colon v.
Strategic Delivery Solutions, LLC (The Wright Law
Firm, attorneys; William D. Wright and David T.
Wright, on the brief).

Andrew W. Dwyer submitted a brief on behalf of
amicus curiae National Employment Lawyers
Association of New Jersey in Gloria Colon v.
Strategic Delivery Solutions, LLC (The Dwyer Law
Firm, attorneys; Andrew W. Dwyer, of counsel and on
the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

These appeals involve arbitration agreements in contracts for employment that, plaintiffs argue, fall within the "exemption clause" of the Federal Arbitration Act (FAA), 9 U.S.C. § 1. The question posed in both cases is whether the disputed arbitration agreements would be enforceable under the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36, if they are exempt from the FAA.

We address Colon v. Strategic Delivery Solutions, LLC, and Arafa v. Health Express Corp. together. Although the facts of the arbitration agreements differ, their overall thrust is the same. In both cases, the plaintiff employees brought suit against their employers in Superior Court, and the employers sought dismissal of the suits in light of the arbitration agreement in the respective employment contracts. Both trial courts granted the employers' motions to dismiss and to compel arbitration.

A panel of the Appellate Division agreed in Colon that the arbitration agreement would be enforceable under the NJAA if, on remand, the trial court found the agreement exempt from the FAA; another Appellate Division panel reversed the dismissal in Arafa, ruling the arbitration agreement in that case null and void.

We now hold that the NJAA applies in the absence of the FAA and that the arbitration agreements at issue are enforceable under the NJAA if the FAA does not apply. We therefore agree with the Appellate Division's decision in Colon and reverse the judgment of the Appellate Division in Arafa.

## I.

We begin by summarizing the pertinent facts and procedural history of both matters.

## A.

## 1.

In Colon, defendant Strategic Delivery Systems, LLC (SDS) is a licensed freight forwarder and broker. Plaintiffs Gloria Colon, Diana Mejia, and Freddy Diaz worked for SDS at the Elizabeth, New Jersey facility from approximately February 2015 through March 2016. Their job descriptions included truck driving and delivery functions for customers throughout the state and surrounding areas.

Each plaintiff entered into an identical employment agreement with SDS. Directly at issue are Paragraphs 19, 20, and 24 of the employment agreements.

Paragraph 19, "Governing Law," states:

> (a) The laws of the state of residence of the Vendor, without regard to the conflicts of law principles thereof,

shall govern this Agreement, including its construction and interpretation, the rights and remedies of the parties hereunder, and all claims, controversies or disputes (whether arising in[ ]contract or tort) between the parties.

(b) The parties voluntarily agree to waive any right to a trial by jury in any suit filed hereunder and agree to adjudicate any dispute pursuant to Paragraph 20 below.

Paragraph 20, "Arbitration and Waiver to Join a Class," states:

(a) <u>Agreement to Arbitrate</u>.  The parties agree to comply to be bound by the [FAA].  The parties agree that any dispute, difference, question or claim arising out of or in any way relating to this Agreement or the transportation services provided hereunder shall be subject to binding arbitration in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA") in effect at the time such arbitration is initiated.  The parties agree that the issue of arbitrability shall be determined by the arbitrator applying the law of the state of the Vendor.

. . . .

(b) <u>Voluntary Waiver to Join a Class</u>.  Vendor hereby agrees that any arbitration, suit, action or other legal proceedings arising out of or in any way relating to this Agreement or the services provided hereunder shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, collective or similar basis unless mutually agreed to in writing by all interested parties.  Vendor hereby voluntarily and expressly waives any right it may have to join any suit, action, arbitration or other legal proceeding arising out of or in any way relating to this Agreement or the services provided hereunder on a class-wide, multiple plaintiff, collective or similar basis.

5

Paragraph 24, "Reformation and Severability," states:

> If any provision of the Agreement shall be invalid, illegal or unenforceable, it shall to the extent possible, be modified in such a manner as to be valid, legal[,] and enforceable but so as to most nearly retain the intent of the parties, and if such modification is not possible, such provision shall be severed from this Agreement, and in[ ]either case the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

2.

Plaintiffs filed a class action complaint against SDS on behalf of themselves and similarly situated persons who performed truck driving and/or delivery services for SDS. Plaintiffs alleged SDS violated the New Jersey Wage and Hour Law by failing to pay overtime wages and violated the New Jersey Wage Payment Law by illegally withholding monies.

SDS filed a motion to dismiss the complaint and compel arbitration on an individual basis pursuant to plaintiffs' arbitration agreements. Because plaintiffs failed to mention the arbitration agreements in their complaint, SDS thus relied on materials not in plaintiffs' complaint, and the trial court applied a summary judgment standard to SDS's motion.

On January 2, 2018, the trial court granted SDS's motion to dismiss and compel arbitration. The trial court found the language of the arbitration agreements was clear and unambiguous, and that plaintiffs were compelled to

6

adjudicate any disputes through arbitration. The trial court addressed only the issue of arbitration and not the other claims raised in the complaint.

The Appellate Division substantially agreed with the trial court, holding in its published decision that plaintiffs waived their right to a jury trial. Colon v. Strategic Delivery Sols., LLC, 459 N.J. Super. 349, 360 (App. Div. 2019). The court recognized a plaintiff may waive the right to a jury trial in an arbitration agreement so long as the language is clear and unambiguous. Id. at 361. Here, the Appellate Division found plaintiffs clearly and unambiguously waived their right to a jury trial in Paragraph 19 of the employment agreements. Ibid. The court further found plaintiffs chose to arbitrate their disputes by agreeing to adjudicate any dispute "pursuant to Paragraph 20," which contained the arbitration agreement language. Id. at 361-62.

The Colon court likewise found that plaintiffs had clearly and unambiguously waived their ability to proceed as a class on their statutory claims. Id. at 363. The Appellate Division distinguished Colon from Muhammad v. County Bank of Rehoboth Beach, DE, 189 N.J. 1, 15-16 (2006), in which this Court found unconscionable a class-arbitration waiver embedded in a consumer contract of adhesion. Colon, 459 N.J. Super. at 363. The panel explained that "this case does not involve a class-arbitration waiver and it was not a consumer contract." Ibid.

7

As to the legal question of whether the NJAA may apply to an agreement exempt from the FAA, the Colon panel held that it may: the FAA does not "occupy the entire field of arbitration," id. at 359 (citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr., Univ., 489 U.S. 468, 477 (1989)), and it therefore does not "preempt[] the enforcement of state arbitration statutes," id. at 359-60 (quoting Palcko v. Airborne Express, Inc., 372 F.3d 588, 595 (3d Cir. 2004)). The Appellate Division thus determined that "the NJAA could be applied even if the FAA did not apply." Id. at 360.

The appellate court found, however, that a key issue remained to be resolved: "[t]he trial court did not determine whether plaintiffs were providing transportation services on an interstate basis." Id. at 358. Because the FAA exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," ibid. (quoting 9 U.S.C. § 1), the panel found it essential to determine, in the first instance, whether the FAA exemption was even applicable here and therefore vacated the trial court's order granting summary judgment and remanded the case, id. at 359.

Ultimately, the Colon court explained that, "if plaintiffs are not engaged in interstate commerce, then the FAA's section one exemption would not apply (assuming they are providing transportation services), and plaintiffs would be

8

required to arbitrate their claims under the FAA." <u>Ibid.</u>  If on the other hand plaintiffs "are engaged in interstate commerce and exempt under the FAA," then "we will enforce the arbitration provision under the NJAA." <u>Id.</u> at 359-60.

B.

1.

In <u>Arafa</u>, decided one day after <u>Colon</u>, plaintiff Essam Arafa began working for defendant Health Express Corporation (Health Express) in April 2016.  He was hired to deliver medicines and pharmaceutical products from pharmacies and medical offices in New Jersey to customers throughout the state and in surrounding areas.

Arafa signed an employment agreement and an arbitration agreement with Health Express.  The arbitration agreement states:

> In the event of a dispute between the Parties, the Parties agree to resolve the dispute as described in this Agreement.  This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and applies to any dispute defined below in paragraph A(1).  BY AGREEING TO ARBITRATE ALL SUCH DISPUTES, THE PARTIES TO THIS AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL.

Paragraph A(3) of the agreement, titled "Class Action Waiver," provides:

9

There will be no right or authority for any claim and/or dispute to be brought, heard or arbitrated as a class action, collective action or representative action . . . . The arbitrator shall not have any authority to hear or arbitrate any such class, collective or representative action. Regardless of anything else in this Agreement and/or rules of procedures that might otherwise apply by virtue of any arbitration organization rules or procedures, including without limitation the rules of the [AAA], the enforceability and validity of this Class Action Waiver may be determined only by a court and not by an arbitrator. In addition, this Class Action Waiver shall not be severable from this Agreement in any instance in which: (a) the dispute is filed as a class, collective or representative action and (b) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class, collective or representative action must be litigated in a civil court of competent jurisdiction.

Paragraph F, the "Enforcement Clause," provides:

This Agreement is the full and complete agreement governing the formal resolution of dispute between Contractor and the Company. Except as stated in paragraph A(3) [(the Class Action Waiver)] above, in the event any portion of this Agreement is deemed unenforceable, the remainder of it will be enforceable.

2.

Arafa filed a class action complaint against Health Express on behalf of himself and others similarly situated. He alleged Health Express misclassified him and the class members as independent contractors, violating New Jersey's Wage and Hour and Wage Payment Laws. Arafa also alleged Health Express failed to pay overtime wages and illegally withheld monies.

10

Health Express filed a motion to dismiss, or alternatively, to stay the proceeding and compel arbitration pursuant to the parties' arbitration agreement. The trial court granted Health Express's motion to dismiss and compel arbitration and ordered the class to pursue all claims in arbitration on an individual basis.

The Appellate Division reversed. Relying on a recent United States Supreme Court decision that 9 U.S.C. § 1 exempts "not only agreements between employers and employees but also agreements that require independent contractors to perform work," the Appellate Division held Arafa was exempt from the FAA and its requirements concerning arbitration under section 1. (quoting New Prime Inc. v. Oliveira, 586 U.S. ___, 139 S. Ct. 532, 539 (2019)).

Further, the court found that the inapplicability of the FAA undermined the entire premise of the parties' contract. The Appellate Division held the arbitration agreement was "unenforceable for lack of mutual assent" and stated that "all other arbitration issues [were] moot." The Arafa panel did not address Health Express's argument that the clause stating the FAA governs can be severed from the remainder of the agreement. Nor did it consider Arafa's argument that the class-action waiver in his contract is unenforceable because it violates federal and state law.

11

We granted plaintiffs' petition for certification in <u>Colon</u>, 239 N.J. 519 (2019), and defendant Health Express's petition for certification in <u>Arafa</u>, 239 N.J. 516 (2019). We also granted the motions of the National Employment Lawyers Association of New Jersey (NELA) and the New Jersey Association for Justice (NJAJ) to participate as amici curiae.

II.

A.

1.

Plaintiff Colon, on behalf of the class members, asserts they are transportation workers for purposes of section 1 of the FAA and are therefore exempt from arbitration. Because the arbitration agreements designated the FAA as the "sole and exclusive governing law," plaintiffs argue there was no "meeting of the minds" because there was no other basis in the contract for arbitration.

Plaintiffs also argue that, by applying the NJAA, the Appellate Division rewrote the parties' arbitration agreements to substitute the express provision in favor of the FAA. Plaintiffs assert the NJAA is not mentioned in the employment contracts nor the arbitration agreements. As such, plaintiffs argue there must be "clear intent" to apply the state law in place of the FAA, which

they allege did not exist here. Ultimately, plaintiffs argue there was no mutual assent for the NJAA to apply to the parties' arbitration agreements.

Plaintiffs also challenge the Appellate Division's finding that they waived their right to proceed in court through the arbitration agreement, stressing that their arbitration agreements fail to expressly mention their statutory wage claims. Specifically, plaintiffs rely on Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A., 168 N.J. 124 (2001), and Moon v. Breathless Inc., 868 F.3d 209 (3d Cir. 2017), in alleging their arbitration agreements contained no mention, either expressly or by general reference, of statutory claims; accordingly, plaintiffs argue, those statutory claims were never part of the arbitration agreement. Plaintiffs add that their designation as independent contractors is a further indication the parties did not anticipate statutory wage claims would be included in the arbitration agreements.

2.

Plaintiff Arafa agrees with the Colon plaintiffs' assertions about the applicability of the NJAA. Arafa stresses that he was a transportation worker engaged in interstate commerce and was therefore exempt from the FAA under section 1. According to Arafa, because the arbitration agreement identifies the FAA as the sole and exclusive governing law, and because he is exempt from arbitration under section 1, there could have been no meeting of the minds

13

about arbitration. Arafa asserts he did not manifest a common understanding of the contract terms because he agreed to be bound by the FAA, which exempts him from arbitration. Therefore, Arafa argues he did not clearly and unequivocally agree to arbitrate.

Further, Arafa argues that absent clear intent to apply non-FAA law, the FAA must be applied. Specifically, Arafa asserts that absent express intent to apply the NJAA, the state law cannot be applied in the FAA's place.

### 3.

Amicus curiae NELA aligns itself with Colon's and Arafa's position: the contractual waiver of the right to a jury trial must be clear, unmistakable, and explicitly stated. NELA argues that Colon and the class did not have a clear mutual understanding with SDS of their assent to the arbitration provision. As such, NELA argues that because the arbitration agreements applied to a waiver of statutory rights, the lack of mutual assent rendered the arbitration agreements invalid and unenforceable. NELA also argues the Appellate Division reformulated the parties' agreement to provide that the NJAA applied.

### 4.

Amicus curiae NJAJ also aligns itself with the plaintiffs' position, arguing the parties entered into an agreement that was invalid under their own

14

choice of applicable law, and therefore, there was no mutual assent at the time the arbitration agreement was entered into. NJAJ argues that here, the parties agreed to arbitrate pursuant to the FAA, and the NJAA is therefore superseded and inapplicable.

Additionally, although NJAJ recognizes the FAA does not generally preempt state law, it posits that there is a direct conflict between the FAA and the NJAA in this matter. Specifically, NJAJ argues Congress intended to reserve more specific dispute resolution legislation for itself concerning transportation workers who are exempt under section 1 of the FAA. Therefore, NJAJ asserts that any state law allowing arbitration of claims brought by transportation workers engaged in interstate commerce is preempted through its conflict with the FAA as contrary to Congress's intent.

B.

1.

Defendant SDS asserts this Court should affirm the Appellate Division in Colon because arbitration agreements need not explicitly refer to statutory claims in order to be enforceable. Rather, SDS argues this Court has found arbitration agreements enforceable that had no scope-limiting language and no references to statutory claims.

15

Further, SDS asserts that plaintiffs' argument that the parties lacked mutual assent is premature because the Appellate Division did not determine whether the FAA applied to the arbitration agreements at issue. Here, SDS argues, it is disputed whether plaintiffs engaged in interstate commerce because the trial court did not address the issue. Therefore, SDS argues that until the trial court determines the FAA's applicability to the arbitration agreements, the issue of mutual assent should not be addressed.

SDS also argues the parties expressly anticipated that a court may invalidate only specific provisions of the agreements in the event those provisions are found unenforceable. SDS asserts the Severability Clause of the parties' agreements permits reformation or severance "of an illegal or unenforceable contractual provision, in order to retain the parties' intent." According to SDS, by applying the NJAA to arbitration agreements, the Appellate Division was enforcing the Severability Clause. Further, SDS notes that nothing in the arbitration agreements precludes application of the NJAA.

2.

Defendant Health Express in <u>Arafa</u> argues this Court should follow the <u>Colon</u> decision because the matters are factually identical and because the Appellate Division in <u>Colon</u> recognized both the FAA and the NJAA are in favor of arbitration. Conversely, Health Express argues the Appellate Division

16

in <u>Arafa</u> misapplied <u>New Prime</u> because the FAA does not preempt state law or "reflect a congressional intent to occupy the entire field of arbitration."

Health Express asserts the FAA choice of law provision should not be interpreted as in conflict with the purpose of the arbitration agreement. Further, Health Express argues the parties unequivocally agreed to arbitrate their disputes, and the FAA's inapplicability to the parties did not destroy the intent to arbitrate in general.

Health Express asserts this Court should sever the unenforceable provision of the arbitration agreement and enforce the remainder. According to Health Express, the FAA choice of law provision may be severed without defeating the central purpose of the arbitration agreement. After severing the FAA provision, Health Express asserts this Court should enforce the arbitration agreement under New Jersey law.

## C.

In considering the issues raised by the parties here, we first address the legal question common to both appeals before us -- whether, if the agreements at issue are exempt from the FAA under 9 U.S.C. § 1, they may be enforceable

17

under the NJAA.[1]  We then address the challenges to the enforceability of the agreements specific to each case.

## III.

## A.

The Federal Arbitration Act, 9 U.S.C. §§ 1 to 16, was enacted in "response to [the] hostility of American courts to the enforcement of arbitration agreements."  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001).  In enacting the FAA, "Congress intended 'to place arbitration agreements upon the same footing as other contracts.'"  Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 208 (2019) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)).  The Act now effectively compels courts to enforce a wide range of arbitration agreements.  Circuit City, 532 U.S. at 111.  The FAA has a liberal federal policy of favoring arbitration and requires courts to enforce arbitration agreements according to their terms.  Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 439 (2014).

---

[1]  We note that it remains a disputed issue whether the plaintiffs in Colon fall within the class of workers covered by section 1:  the Appellate Division remanded for fact-finding on that subject, and it may therefore still develop that the exemption provision does not apply and the FAA governs the agreement.  Our determination as to the applicability of the NJAA may therefore not turn out to bear directly upon the case.

18

As "the supreme law of the land regarding arbitration," Goffe, 238 N.J. at 207, "[t]he FAA . . . preempts any state rule discriminating on its face against arbitration," Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. ___, 137 S. Ct. 1421, 1426 (2017).  Significantly, however, the FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."  Volt Info. Scis., 489 U.S. at 477.  And, although the FAA preempts state laws that treat arbitration agreements differently from other contracts, "the FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements[,] under general contract principles."  Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002).

## B.

The FAA's coverage provision, 9 U.S.C. § 2 (section 2), compels judicial enforcement of written arbitration agreements.  It provides that

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
>
> [9 U.S.C. § 2.]

19

Section 2 allows "agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

The instant case, however, involves not the basic coverage under section 2 of the FAA, but the exemption from coverage under section 1. The "exemption clause" provides the Act shall not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

In Circuit City, the Supreme Court interpreted "or any other class of workers engaged in foreign or interstate commerce" to mean that "[s]ection 1 exempts from the FAA only contracts of employment of transportation workers" so engaged. 532 U.S. at 119 (emphasis added). Thus, for section 1 to apply and exclude from the FAA the arbitration agreement in Colon, it would have to be determined that plaintiffs in that case are transportation workers engaged in interstate commerce.

In Arafa, meanwhile, it is undisputed that section 1 applies. As the panel in that case observed, the Supreme Court held in New Prime that section

20

1 of the FAA is not limited to employees because the term "workers" includes independent contractors. See 139 S. Ct. at 540-41. Section 1 therefore encompasses Arafa's contract.

Because section 1 potentially applies to the two agreements at issue, we turn to the consequences that would flow from its application; namely, whether the NJAA would apply in the FAA's stead.

C.

In Colon, the agreements provide the "laws of the state of residence of the Vendor . . . shall govern this Agreement." The "residence of the Vendor" provided in each agreement is New Jersey. In Arafa, the agreement included references to plaintiff's "Enrollment in New Jersey," defendant's principal place of business in New Jersey, and a statement that plaintiff was authorized to perform "delivery and/or transportation services in the State of New Jersey." Through those New Jersey contacts, the law of New Jersey likewise applies to the contract at issue in Arafa. See Cont'l Ins. Co. v. Honeywell Int'l, Inc., 234 N.J. 23, 52, 57-58 (2018) (noting that, to determine what law governs contracts in the absence of an express choice-of-law provision, New Jersey takes into consideration a number of factors, two particularly strong ones being "the place of performance" of the contract and "the domicile, residence, and places

21

of incorporation and of business of the parties"). And the relevant New Jersey law is the NJAA.

The New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36, is nearly identical to the FAA and enunciates the same policies favoring arbitration. Atalese, 219 N.J. at 440. The NJAA governs "all agreements to arbitrate made on or after January 1, 2003," and exempts from its provisions only "an arbitration between an employer and a duly elected representative of employees under a collective bargaining agreement or collectively negotiated agreement." N.J.S.A. 2A:23B-3(a).

Significantly, since its enactment, the NJAA has applied automatically as a matter of law to all non-exempted arbitration agreements from its January 1, 2003 effective date on, see ibid., and has applied to all agreements to arbitrate made on or after July 4, 1923, since January 1, 2005, see id. at (c) to (d). By contrast, from January 1, 2003 to January 1, 2005, the act "govern[ed] an agreement to arbitrate made before January 1, 2003 if all the parties to the agreement or to the arbitration proceeding so agree[d] in a record." See id. at (b). Within N.J.S.A. 2A:23B-3 itself, therefore, the Legislature marked the difference between optional and mandatory application of the NJAA. In short, for arbitration agreements forged since 2003, there has been no need to express

an intent that the NJAA would apply because its application has been automatic, absent preemption.

In these appeals, we are well beyond the date upon which application of the NJAA became mandatory for all non-exempt arbitration agreements, whenever made, that are governed by the laws of New Jersey. We therefore reject any argument that the absence of an express invocation of the NJAA means that it cannot apply. Rather, the NJAA applies to the agreements unless preempted by the FAA.

As noted above, there is no express preemption provision in the FAA, including in section 1. Nor would application of the NJAA here frustrate the principal purpose of the FAA by discriminating against arbitration agreements. Plaintiffs, with the support of amici, nevertheless suggest that finding the arbitration agreement enforceable under the NJAA would conflict with Congress's intent to exclude certain kinds of contracts for work from arbitration.

The Supreme Court has rejected plaintiffs' argument. In Circuit City, the Court observed "that the legislative record on the § 1 exemption is quite sparse." 532 U.S. at 119. The respondent in that case argued that holding the exemption to apply to transportation workers "attributes an irrational intent to Congress." Id. at 120. The Court, however, saw

23

no paradox in the congressional decision to exempt the workers over whom the commerce power was most apparent. To the contrary, it is a permissible inference that the employment contracts of the classes of workers in § 1 were excluded from the FAA precisely because of Congress' undoubted authority to govern the employment relationships at issue by the enactment of statutes specific to them.

[Id. at 120-21.]

The Court further explained, in regard to "the residual exclusion of 'any other class of workers engaged in foreign or interstate commerce,'" that "Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods explains the linkage to the two specific, enumerated types of workers identified in the preceding portion of the sentence," namely "seamen" and "railroad employees." Id. at 121 (quoting 9 U.S.C. § 1).

In other words, Congress's motive behind the exemption was to provide more specific legislation for workers engaged in transportation services. Ibid. Congress did not intend to exclude transportation workers from arbitration altogether, but rather to subject their agreements to other statutes that may or may not require arbitration.

Arafa further relies on this Court's holding in Goffe to assert that the FAA preempts the application of the NJAA. The Appellate Division did not reach that issue in its decision because it found that "the arbitration agreement

24

is invalid," and "all other arbitration issues are moot." However, this Court did not hold that the FAA preempts the application of state arbitration laws in Goffe. Rather, this Court reasoned that it looks to the United States Supreme Court's decisions on arbitration to guide it "in the enforcement of arbitration agreements according to their terms." Goffe, 238 N.J. at 208.

Again, the United States Supreme Court has stated that "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." Volt Info., 489 U.S. at 477. The FAA does, however, preempt "any state rule discriminating on its face against arbitration." Kindred Nursing Ctrs., 137 S. Ct. at 1426.

Application of the NJAA in the present matter does not discriminate against arbitration and therefore does not render the arbitration agreement at issue unenforceable. And the NJAA will apply unless preempted even without being explicitly referenced in an arbitration agreement; no express mention of the NJAA is required to establish a meeting of the minds that it will apply inasmuch as its application is automatic.[2]

---

[2] We reject the proposition that the inapplicability of the FAA must vitiate the entire agreement to arbitrate. Both contracts at issue contained clear severance clauses (Paragraph 24 in Colon; the "Enforcement Clause" in Arafa). Such clauses are indicative of the parties' intent that the agreement as a whole survives the excision of an unenforceable provision. See Frankenmuth Mut. Ins. Co. v. Escambia Cty., 289 F.3d 723, 728-29 (11th Cir. 2002).

25

Having found that the NJAA will apply to the agreement in Arafa and may apply to the agreement in Colon if it is determined upon remand that section 1 applies, we next consider plaintiffs' challenges to the enforceability of their respective arbitration agreements.

IV.

A.

Our Court reviews de novo the enforceability of arbitration agreements. Goffe, 238 N.J. at 207. "The enforceability of arbitration provisions is a question of law . . . ." Ibid. Therefore, we owe no deference to the Appellate Division's or trial court's analyses of such provisions. Ibid. Our Court essentially "construe[s] the arbitration provision with fresh eyes." Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016).

"[I]n deciding whether to enforce the arbitration provision in this [contract] for employment, we rely on the well-recognized national policy and the established State interest in favoring arbitration." Martindale, 173 N.J. at 85. "[I]t is well established that an employee may . . . waive his or her right to pursue a statutory claim in a judicial forum in favor of arbitration." Id. at 92 (citing Gilmer, 500 U.S. at 30). "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial forum." Id. at 93

26

(quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

"[U]nder New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Atalese, 219 N.J. at 443 (second alteration in original) (quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)); see also id. at 436 ("The absence of any language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable.").

In Garfinkel, this Court stated an arbitration provision need not "refer specifically to the [statute] or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights," but it "should at least provide that the employee agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination." 168 N.J. at 135-36. One year later, in Martindale, we considered an arbitration agreement providing that the plaintiff "'agree[d] to waive her right to a jury trial in any action or proceeding relating to [her] employment' and that 'all disputes relating to [her] employment . . . or termination thereof' shall be subject to arbitration." 173 N.J. at 96. We held "that plaintiff knowingly and voluntarily agreed to arbitrate her statutory causes of action against her employer." Id. at 97.

27

Later, in <u>Atalese</u>, we emphasized in the context of consumer contracts that an arbitration clause does not need "to identify the specific constitutional or statutory right" waived as long as "the clause, at least in some general and sufficiently broad way, . . . explain[s] that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." 219 N.J. at 446-47. Essentially, by entering into an arbitration agreement, the parties must know they have waived the "time-honored right to sue." <u>Id.</u> at 444 (quoting <u>Garfinkel</u>, 168 N.J. at 132).

In addition to a clear and unambiguous waiver of statutory claims, when determining whether to enforce an arbitration agreement, "a court's initial inquiry must be -- just as it is for any other contract -- whether the agreement to arbitrate all, or any portion, of a dispute is 'the product of mutual assent, as determined under customary principles of contract law.'" <u>Kernahan v. Home Warranty Adm'r of Fl., Inc.</u>, 236 N.J. 301, 319 (2019) (quoting <u>Atalese</u>, 219 N.J. at 442)). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." <u>Atalese</u>, 219 N.J. at 442. "A legally enforceable agreement requires 'a meeting of the minds.'" <u>Ibid.</u> (quoting <u>Morton v. 4 Orchard Land Tr.</u>, 180 N.J. 118, 120 (2004)).

B.

1.

Applying those principles to the provisions at issue in <u>Colon</u>, we agree with the Appellate Division that the plaintiffs' statutory wage claims are covered by their arbitration agreements. Relying on <u>Garfinkel</u>, <u>Martindale</u>, and <u>Atalese</u>, cases in which we found a plaintiff must knowingly and voluntarily waive his or her right to pursue statutory claims in a judicial forum, the Appellate Division properly found plaintiffs knowingly and voluntarily waived the right to pursue their statutory wage claims in court. <u>Colon</u>, 459 N.J. Super. at 362.

As required by this Court, the <u>Colon</u> employment agreements provide that plaintiffs "voluntarily agree[d] to waive any right to a trial by jury in any suit filed hereunder," and to "adjudicate any dispute pursuant to [the arbitration agreement]." The arbitration agreements further specified that plaintiffs agreed to arbitrate any claim "arising out of or in any way relating to the Agreement or the transportation services provided hereunder." Therefore, because the arbitration agreements are enforceable, we find plaintiffs' statutory wage claims fall within the scope of such agreements.

We also agree with the Appellate Division that <u>Muhammad</u> does not apply here. By the same principles of construction applied to the jury trial

waiver provision, we find that plaintiffs knowingly and voluntarily waived their ability to proceed as a class.

2.

Turning to the waiver in <u>Arafa</u>, we likewise conclude that the jury trial waiver in that case was knowing and voluntary in light of the similarly broad agreement to resolve "all disputes" between the parties through binding arbitration.

V.

In sum, we conclude that the NJAA may apply to arbitration agreements even if parties to the agreements are exempt under section 1 of the FAA. We therefore hold that the parties in both <u>Colon</u> and <u>Arafa</u> are not exempt from arbitration and that their arbitration agreements are enforceable. In <u>Arafa</u>, the arbitration agreements are enforceable under the NJAA. In <u>Colon</u>, the arbitration agreements are enforceable under either the FAA or the NJAA, which will be determined by the trial court upon remand when it resolves the factual question of whether the employees in that case were transportation workers engaged in interstate commerce. Therefore, we reverse the judgment of the Appellate Division in <u>Arafa</u> and affirm the judgment of the Appellate Division in <u>Colon</u>.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE ALBIN, concurring in the judgment and dissenting in part, filed a separate opinion.

Essam Arafa, on behalf
of himself and others
similarly situated,

Plaintiff-Respondent,

v.

Health Express Corporation,

Defendant-Appellant.

_____

Gloria Colon, Diana Mejia and Freddy Diaz,
on behalf of themselves and all other
similarly situated persons,

Plaintiffs-Appellants,

v.

Strategic Delivery Solutions, LLC,
and Myriam Barreto,

Defendants-Respondents.

JUSTICE ALBIN, concurring in part and dissenting in part.

I write separately simply to express my view that AT&T Mobility LLC
v. Concepcion, 563 U.S. 333, 346-47, 352 (2011), in no way restricts our
application of Muhammad v. County Bank of Rehoboth Beach, 189 N.J. 1, 22
(2006), to the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36.

1

In Muhammad, this Court struck down as unconscionable a class-arbitration waiver in a consumer contract of adhesion by applying well-settled state law. 189 N.J. at 18, 22. In that case, we recognized that in most cases involving small or modest damage claims, the class-action vehicle may be the only practicable means of attracting competent counsel willing to undertake costly litigation and therefore of securing relief for individual claimants. Id. at 19-22; see also Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 517-18 (2010) (explaining that one of the important policy goals underlying class actions is to give plaintiffs access to the courthouse to pursue small claims). We declared that the contractual provision "depriv[ing] Muhammad of the mechanism of a class-wide action" was unconscionable, whether in a court-litigated or arbitration-litigated action. Muhammad, 189 N.J. at 22.

In Concepcion, however, under Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, the United States Supreme Court upheld the type of class-waiver provision in an arbitration agreement that we voided on grounds of unconscionability in Muhammad. See 563 U.S. at 336-38, 343, 352. The Court found that imposing under state law "the availability of classwide arbitration interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA." Id. at 344.

2

Although Concepcion necessarily controls our application of the doctrine of contractual unconscionability to class-arbitration waivers under the FAA, Muhammad controls class-arbitration waivers under the NJAA.  See Muhammad, 189 N.J. at 14-16 (analyzing New Jersey "state law requirements in respect of contract unconscionability").  In our federal system, for purposes of construing the NJAA, we are not required to adopt a federal model in conflict with state-law equitable principles intended to level the playing field for powerless individuals who seek relief in our civil justice system.

In Muhammad, we struck down a class-waiver provision in a consumer contract largely because the provision prevented litigants from pursuing claims that "predictably involve[d] small amounts of damages."  Id. at 20 (quoting Discover Bank v. Superior Court, 113 P.3d 1100, 1110 (Cal. 2005)).  Here, in a slightly different setting, individual employees are pursuing small statutory wage claims, and the only realistic means of seeking relief is through the mechanism of a class action, either in an arbitral or judicial forum.  See Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 115-16 (2007) (explaining that, given "the nominal value of each class member's [wage] claim," where each litigant "lack[ed] the financial resources of their corporate adversary," the class action was an "equalizing mechanism" that "allow[ed] them to adequately seek redress").

3

I concur that the NJAA either governs or may govern the applicability of the arbitration agreements in these cases. But I believe that the class-waiver provisions are unconscionable and unenforceable, generally for the policy reasons explained in <u>Muhammad</u>, 189 N.J. at 16-18. To the extent that today's opinion in any way undermines the beneficent purposes of <u>Muhammad</u>, <u>see</u> <u>ante</u> at ___, ___ (slip op. at 4, 29), I respectfully dissent.